IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MECHANICAL LICENSING COLLECTIVE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PANDORA MEDIA, LLC, ) <br> ) <br> Defendant. ) | Case No. 3:24-cv-00168 <br> Judge Richardson/Frensley |

## ORDER

### I. INTRODUCTION

Plaintiff Mechanical Licensing Collective ("The MLC") brought this action under 17 U.S.C. § 115(d)(3)(C)(i)(VIII) against Defendant Pandora Media, LLC ("Pandora") "to recover royalties due from Pandora under the compulsory mechanical license that Pandora obtained pursuant to 17 U.S.C. §115(d) to enable its consumer music streaming platform." Docket No. 1, p. 1. Pandora has denied the substantive allegations and asserted affirmative defenses. Docket No. 28.

This matter is now before the Court upon a "Motion to Compel" filed by The MLC. Docket No. 76. The MLC has also filed a Supporting Memorandum (in redacted and unredacted form) and other supporting documents. Docket Nos. 76-1 through 76-4, 88, 89. Pandora has filed a Response in Opposition and supporting documents. Docket Nos. 79, 79-1 through 79-6.

The MLC has filed a Reply. Docket No. 83. For the reasons set forth below, The MLC's Motion (Docket No. 76) is GRANTED.

## II. LAW AND ANALYSIS

### A. Background

The Parties are at an impasse regarding the status of 31 discovery documents that Pandora has redacted on the grounds that the redacted portions are protected by the attorney-client privilege. This dispute first came to the Court's attention through the submission of a Joint Discovery Dispute Statement that raised this and other issues that have since been resolved. Docket No. 67. In that Statement, Pandora represented to the Court that "Pandora stands behind its remaining assertions of privilege with respect to these documents and does not object to *in camera* review which will confirm that Pandora's privilege assertions are entirely appropriate, but respectfully submits that such review is unnecessary." *Id.* at 16. The Court subsequently conducted a discovery conference with the Parties, at which the possibility of an *in camera* review was discussed. The Court understood both Parties to be amenable to the idea of an *in camera* review of a sample set of documents.

The MLC's instant Motion reiterates The MLC's request that the Court compel Pandora "to produce complete, unredacted versions of 31 documents," but the Motion and its Supporting Memorandum primarily focus on the request to conduct an *in camera* review of 10 sample documents. Docket No. 76, p. 1-2; *see* Docket Nos. 76-1, 88. If the Court's *in camera* review determines that "those documents contain errant redactions," The MLC requests an *in camera* review of all 31 challenged documents, followed by an order compelling Pandora to produce unredacted versions of each. Docket No. 76, p. 2.

## B. Requests for *In Camera* Review

While *in camera* review is available to settle the issue of whether the privilege applies, the Supreme Court has warned that "[t]here is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." *U.S. v. Zolin*, 491 U.S. 554, 571 (1989).

In *Zolin*, the Supreme Court set forth the standard for determining when a challenge to the assertion of attorney-client privilege should be determined by an *in camera* review of the challenged documents:

> We think that the following standard strikes the correct balance. Before engaging in *in camera* review . . . the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that an *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.
>
> Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through an *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Zolin*, 491 U.S. at 572 (internal quotation marks and citations omitted). While *Zolin* specifically dealt with the application of the crime-fraud exception, this Court has previously found that "the standard is appropriate . . . to evaluate whether the documents requested for *in camera* review may reveal evidence of business advice that is not shielded from discovery by the attorney-client privilege . . . ." *Armouth Int'l, Inc. v. Dollar Gen. Corp.*, No. 3:14-0567, 2015 WL 6696367, 2015 U.S. Dist. LEXIS 148784, at *7 (M.D. Tenn. Nov. 2, 2015).

3

C.  **The MLC's Motion**

While The MLC continues to argue for the production of unredacted versions of the 31 documents at issue, like the Parties' briefs, this Order is focused on whether *in camera* review of the 10 sample documents is warranted.

1. **Factual Basis Adequate to Support a Good Faith Belief**

Pursuant to *Zolin*, the Court's analysis begins with deciding whether The MLC has made a showing of a factual basis adequate to support a good faith belief by a reasonable person that an *in camera* review of the challenged documents may reveal evidence to establish that they are not protected by the attorney-client privilege.  The MLC asserts that "most of the documents at issue are non-legal operational documents written for software engineers, product managers, and individuals in similar roles to create and operate Pandora's streaming services, while the remainder are similarly non-legal documents written for a business audience," noting that "as best The MLC can tell based on Pandora's disclosures, none of these documents were written by a lawyer or written to a lawyer."  Docket No. 88, p. 10 (citation modified).  Although The MLC acknowledges that "there can be instances where a non-legal employee can repeat a privileged attorney-client communication to another non-legal employee without waiving privilege," The MLC argues that Pandora has not met its burden to demonstrate that the redacted portions were passing along an attorney's legal advice.  *Id.* at 1, 10-17.  The MLC also identifies some examples of what it considers evidence of inappropriate redactions, including Slack messages between non-attorneys that are redacted but conclude with the (unredacted) statement by one of the participants that her messages were "NOT legal advice" and a sentence "from a technical product design document" redacted from one document but not another, that "had nothing to do with legal advice" but was "damaging to Pandora's defenses in this action."  *Id.* at 11, 14.

Pandora maintains that "the redacted portions of the product and business documents capture or convey internal communications reflecting counsel's guidance to business teams on regulatory compliance issues and legal questions," arguing that "those references to legal advice are privileged even if no attorney is named on the face of the document, and even if the surrounding text concerns non-legal subject matter." Docket No. 79, p. 14 (citation modified). As for the specific examples identified by The MLC, Pandora asserts that the employee who stated that her comments were "not legal advice" was doing so to distinguish her own remarks from the legal advice of counsel that she was conveying, and that "one inadvertent over-redaction, promptly remedied, does not call into question the validity of the privilege claims across thousands of pages of production." *Id.* at 15, 18 (citation modified).

The Sixth Circuit has held that under federal common law, the attorney-client privilege involves the following elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived.

*Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co.*, No. 93-3084, 1994 U.S. App. LEXIS 3828, at *17-18 (6th Cir. Feb. 25, 1994), *quoting U.S. v. Goldfarb*, 328 F.2d 280 (6th Cir. 1964). The party asserting the attorney-client privilege has the burden of demonstrating that the privilege applies. Fed. R. Civ. P. 26(b)(5); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).

"In the corporate context, the attorney-client privilege may extend to communications between employees that convey legal advice given by an attorney to the corporation." *Ajose v. Interline Brands, Inc.*, No. 3:14-1707, 2016 WL 6893866, 2016 U.S. Dist. LEXIS 162617, at *23

(M.D. Tenn. Nov. 23, 2016). The Supreme Court has held that communications between in-house attorneys and the business's employees can be privileged. *Upjohn Co. v. United States*, 449 U.S. 383, 392-95 (1981); *see Reed v. Baxter*, 134 F.3d 351, 359-60 (6th Cir. 1998), *quoting Upjohn*, 449 U.S. at 392-95.

Nevertheless, Pandora is potentially incorrect when it asserts that "references to legal advice are privileged." Docket No. 79, p. 14. A "reference" to legal advice is not necessarily passing along that advice (which would be privileged in the corporate context). And the Court is troubled by the example of the inconsistently redacted sentence related to a component of the streaming service. Pandora reacted appropriately in reviewing the materials in question and remedying the erroneous redaction, but in the context of the underlying dispute at the heart of this case, the initial omission of that sentence has particular significance.[1] Considering all of the elements identified, the Court finds that The MLC has made a showing of a factual basis *adequate* to support a good faith belief by a reasonable person that an *in camera* review of the challenged documents *may* reveal evidence to establish that they are not protected by the attorney-client privilege.

## 2. The Court's Discretion

Whether to conduct an *in camera* review is therefore at the discretion of the Court, which is charged with exercising that discretion "in light of the facts and circumstances of the particular case." *Zolin*, 491 U.S. at 572. Here, the volume of the materials the Court is being asked to review is low, a sample set of only ten documents. The MLC contends that the allegedly privileged information is very important and goes to central issues in the case. The Court

---

[1] To avoid having to seal this Order, the Court is deliberately making references that are understood by the Parties but that lack detail that they have sealed in their briefs.

reaches no conclusions as to the likelihood that the *in camera* evidence, together with other available evidence, will establish that the redacted material is not privileged. But the Court finds that the "facts and circumstances of the particular case" include, in this instance, the fact that the Parties appear to have reached an agreement that they would ask the Court to review a sample set of documents. Like The MLC, the Court is not persuaded by Pandora's contention that what it meant was that it would not object if the Court found it absolutely necessary to conduct an *in camera* review and ordered Pandora to comply. The Court understands that Pandora does not believe that such a review is necessary, but based on the Parties' initial Joint Dispute Statement and the discovery conference with the Court, it seems clear that Pandora agreed not to object to such a review. That is only one factor, but does influence the Court in its exercise of its discretion. Taken altogether, the Court finds that the facts and circumstances weigh in favor of conducting an *in camera* review of the selected sample documents.

### III. **CONCLUSION**

For the foregoing reasons, The MLC's Motion (Docket No. 76) is GRANTED to the extent it seeks *in camera* review of the ten sample documents. No later than January 6, 2026, Pandora must provide those documents to the Court, unredacted and *ex parte*. Further, the Court will grant Pandora's request to provide "any necessary additional explanation *in camera* and *ex parte*." Docket No. 79, p. 20, n.9. Any such explanation must not exceed ten pages, inclusive of attachments.

**IT IS SO ORDERED.**

**Jeffery S. Frensley**
**United States Magistrate Judge**