THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MECHANICAL LICENSING COLLECTIVE,<br><br>       Plaintiff,<br><br>v.<br><br>PANDORA MEDIA, LLC,<br><br>       Defendant. | Civil Action No. 3:24-cv-00168<br><br>District Judge Eli J. Richardson<br><br>Magistrate Judge Jeffrey S. Frensley |

**MEMORANDUM OF LAW IN SUPPORT OF PANDORA MEDIA, LLC'S *DAUBERT*
MOTION TO EXCLUDE TESTIMONY OF ROBIN FLYNN**

# TABLE OF CONTENTS

|  | Page |
|---|---|
| **INTRODUCTION** | 1 |
| **FACTUAL BACKGROUND** | 3 |
| **LEGAL STANDARD** | 4 |
| **ARGUMENT** | 5 |
|     I.   Ms. Flynn Is Not a Qualified Expert on the Issues Presented in This Case | 5 |
|     II.  The Flynn Report Does Not Address Topics Relevant or Useful to the Trier of Fact in this Case | 7 |
|     III. The Flynn Report is Methodologically Unreliable and Consists of Impermissible Document Narration | 8 |
|     IV. The Flynn Report Contains Inadmissible Opinions on Pandora's Motives, Intent, and State of Mind | 10 |
| **CONCLUSION** | 13 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Berry v. City of Detroit*,
　25 F.3d 1342 (6th Cir. 1994) ..................................................................................................5

*Cabrera v. Cordis Corp.*,
　134 F.3d 1418 (9th Cir. 1998) ................................................................................................8

*City of Pomona v. SQM N. Am. Corp.*,
　750 F.3d 1036 (9th Cir. 2014) ................................................................................................9

*CMI-Trading, Inc. v. Quantum Air, Inc.*,
　98 F.3d 887 (6th Cir. 1996) ..................................................................................................11

*Coffey v. Dowley Mfg., Inc.*,
　187 F. Supp. 2d 958 (M.D. Tenn. 2002) ................................................................................8

*Cottengim v. Mentor Corp.*,
　2007 WL 4553995 (E.D. Ky. Sept. 24, 2007) ........................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
　509 U.S. 579 (1993) ...............................................................................................1, 4, 5, 7, 8

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
　546 F. Supp. 3d 666 (S.D. Ohio 2021) .................................................................................10

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
　348 F. Supp. 3d 698 (S.D. Ohio 2016) .................................................................................12

*Hunt v. Hadden*,
　127 F. Supp. 3d 780 (E.D. Mich. 2015) ...............................................................................12

*Johnson v. Baker*,
　2009 WL 3486000 (W.D. Ky. Oct. 23, 2009) ......................................................................11

*Kumho Tire Co. v. Carmichael*,
　526 U.S. 137 (1999) ................................................................................................................4

*Loper Bright Enters. v. Raimondo*,
　603 U.S. 369 (2024) ..............................................................................................................12

*Newell Rubbermaid, Inc. v. Raymond Corp.*,
　2010 WL 2643417 (N.D. Ohio July 1, 2010) ........................................................................5

*Peoples Gas Co. of Ky. v. Fitzgerald*,
    188 F.2d 198 (6th Cir. 1951) ...........................................................................................7

*Pride v. BIC Corp.*,
    218 F.3d 566 (6th Cir. 2000) ...........................................................................................5

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ...........................................................................................4

*Tamraz v. Lincoln Elec. Co.*,
    620 F.3d 665 (6th Cir. 2010) .....................................................................................5, 12

*Trentham v. Hidden Mountain Resorts, Inc.*,
    2010 WL 11519874 (E.D. Tenn. Jan. 15, 2010).............................................................7

*United States v. Coffman*,
    574 F. App'x 541 (6th Cir. 2014) ....................................................................................7

*United States v. Dedman*,
    527 F.3d 577 (6th Cir. 2008) .........................................................................................12

*United States v. LeBlanc*,
    45 Fed. App'x 393 (6th Cir. 2002) ..................................................................................7

*United States v. Smith*,
    736 F.2d 1103 (6th Cir. 1984) .........................................................................................7

*Univ. of Pittsburgh v. Townsend*,
    2007 WL 1002317 (E.D. Tenn. Mar. 30, 2007) ..............................................................7

**Statutes**

17 U.S.C. § 114..............................................................................................................1, 8, 10

17 U.S.C. § 115....................................................................................................................1, 8

**Rules & Regulations**

Fed. R. Evid. 403 ......................................................................................................................8

Fed. R. Evid. 702 ...........................................................................................................1, 4, 8, 9

Defendant Pandora Media, LLC ("Pandora") respectfully submits this memorandum of law in support of its *Daubert* motion to exclude the testimony of Robin Flynn proffered by plaintiff Mechanical Licensing Collective ("MLC").

## INTRODUCTION

Ms. Flynn's testimony falls well outside the bounds of admissible expert evidence under Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596–97 (1993). At bottom, this case turns on a question of statutory interpretation: whether Pandora's ad-supported internet radio offering, given its particular functionality and the manner in which it enables users to access sample sessions of Pandora Premium (Pandora's separately licensed subscription on-demand streaming offering), is an "interactive" service within the meaning of Sections 114 and 115 of the Copyright Act. Ms. Flynn's expert report offers nothing that will assist the Court or jury in addressing that question. She merely strings together a series of screenshots and quotations from documents produced by Pandora in this litigation with narrative glosses that do nothing more than describe what the documents say and purport to divine the intent of Pandora or the authors. Her testimony fails to reflect any interpretive expertise with respect to this particular category of documents that a lay person does not possess and could not apply by reading the documents on their own. Indeed, one searches Ms. Flynn's report in vain for any real opinion whatsoever amid the rote quotations and speculation about Pandora's purported strategic motives. To the extent one can find any, there are none that will assist the Court or jury in understanding what matters in this case: the actual functionality of Pandora's ad-supported radio service and how users interact with Pandora Premium through "Premium Access" sessions.

1

Ms. Flynn's testimony should be excluded for three related reasons. *First*, Ms. Flynn is not a qualified expert in the music streaming industry. She is a media analyst whose experience lies primarily in media advertising and the financial performance and valuation of stations and companies in the traditional broadcast television, radio, and cable television markets. *See* Decl. of Crystal L. Weeks ("Weeks Decl."), Ex. A, Expert Report of Robin Flynn ("Flynn Rpt.") and Appendices A-C at Appendix A. Ms. Flynn has no specialized knowledge in the design or functionality of digital music services (what matters here), and she admitted that she did not analyze the mechanical or technical aspects of free Pandora's interface or source code. Weeks Decl., Ex. B, Excerpted Deposition Transcript of Robin Flynn ("Dep. Tr.") at 28:18-23, 55:5-8. Nor has she demonstrated any particularly relevant expertise that provides her with a special ability to interpret the documents she considered in a way that the Court and/or jury cannot do on their own. *Second*, the only "methodology" Ms. Flynn identified was reading a limited set of Pandora documents selected jointly with her counsel and paraphrasing them in her report based on her general "media industry" experience—*i.e.*, mere recitation that reflects no true expertise and instead presents a one-sided narrative to usurp the jury's fact-finding role. She conducted no independent analysis of Pandora's service, reviewed no underlying usage data or technical materials, and in some instances even misquoted or materially altered key documents to support her biased perspective. *Third*, where Ms. Flynn does hazard testimony beyond mere recitation of what documents say, that testimony is limited to speculation about Pandora's "goals," "motives," "strategy," and "frustration," which she admits were simply inferences from her reading of the documents. Ms. Flynn's testimony on Pandora's purported intent and state of mind not only lacks any reliable or informed expertise, but is also categorically inadmissible under governing precedent because it invades the province of the trier of fact.

Because Ms. Flynn's opinions are unqualified, unreliable, and irrelevant to the statutory application required of the Court, her testimony should be excluded in its entirety.

## FACTUAL BACKGROUND

On October 24, 2025, the MLC served Ms. Flynn's expert report on Pandora. The Flynn Report, from the beginning, purports to describe a set of alleged historical facts: how Pandora "positioned, marketed, and developed its streaming music services, with particular focus on ad-supported interactive functionality, including customized music programming." Flynn Rpt. at 4. Ms. Flynn's purported "conclusions" about Pandora's history reflect what she has inferred from reading a limited set of Pandora documents selected in conjunction with the MLC's counsel. *Id.* at 5; *see also* Dep. Tr. 15:20-22; 18:6-13. As noted above, the body of her report consists largely of stringing together quotations from Pandora's SEC filings, earnings calls, and internal presentations, with Ms. Flynn's added narrative commentary on what she thinks those quotations mean or what strategic intentions she thinks they reveal on the part of the company. It is just a book report in the guise of an expert report.

Pandora deposed Ms. Flynn on December 17, 2025. Ms. Flynn confirmed that the only methodology she employed in reaching her conclusions was to read the documents cited in her report and to interpret them through the lens of her "general experience" in the media industry. Dep. Tr. 67:9-14. She admitted that, in reaching her opinions, she did not: design or conduct any consumer surveys, focus groups, or experiments, Dep. Tr. 29:21-24; speak with any Pandora employees, music industry executives, artists or songwriters, Dep. Tr. 29:25-30:5; review raw usage data, Dep. Tr. 28:24-29:4; review back-end technical information, Dep. Tr. 55:6–8; review source code for free Pandora, Dep. Tr. 28:18-23; or review any documents beyond those

3

expressly cited in her report or selected for her review by the MLC's counsel, Dep. Tr. 15:20-22, 18:6-13.[1]

## **LEGAL STANDARD**

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.

Under *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), district courts act as "gatekeepers" to ensure that proposed expert testimony is both relevant and reliable before it is presented to the factfinder. Courts in this Circuit apply a three-part test to make that determination: expert opinion is admissible only if (1) the witness is qualified by "knowledge, skill, experience, training, or education"; (2) the testimony is relevant in that it will assist the trier of fact to understand the evidence or determine in fact an issue; and (3) the testimony is reliable, meaning it is based on sufficient facts or data and is the product of reliable principles and methods that have been reliably applied to the facts of the case. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (citing Fed. R. Evid. 702). The "party proffering expert testimony must show by a 'preponderance of proof' that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in

---

[1] Ms. Flynn identified only two calculations she performed in preparing her report, both of which used basic multiplication, not any expert analysis, to turn a percentage into a round number. *See* Flynn Rpt. at 28; Dep. Tr. 30:16-25.

understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592 n.10).

## ARGUMENT

### I. Ms. Flynn Is Not a Qualified Expert on the Issues Presented in This Case

Rule 702 requires that an expert possess *specialized knowledge* that is genuinely tailored to the subject matter of the proposed testimony, not just a generalized familiarity with an industry. It also "requires 'more than subjective belief or unsupported speculation.'" *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 670 (6th Cir. 2010) (quoting *Daubert*, 509 U.S. at 590). A witness is not "an expert simply because he claims to be." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 2010 WL 2643417 at *3 (N.D. Ohio July 1, 2010), *aff'd*, 676 F.3d 521 (6th Cir. 2012) (internal citation omitted). Courts are to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). Here, the ultimate issues in this case concern the design and operation of digital music streaming services, the specific features and functionality of Pandora's free ad-supported internet radio offering, and how users of that internet radio offering can access frequency- and time-limited sample sessions of Pandora Premium, Pandora's separately licensed on-demand music streaming service, for which Pandora already pays royalties to the MLC under the statutory license at issue. At her deposition, Ms. Flynn made fatal admissions that, notwithstanding her years of work in the "media industry" generally, make clear that she has no such specialized expertise:

- She has never designed or operated a digital music streaming service, and she has no experience in product design or engineering for such services, *see* Dep. Tr. 114:25-115:2;

5

- She could not identify any publications in her background involving empirical research on the economics or technical operation of digital music platforms, *see* Dep. Tr. 50:23–51:12; and

- She did not "analyze the mechanics or technical aspects of [Pandora's] consumer-facing interface design," including source code, and thus cannot opine on how the free Pandora service actually functions, *see* Dep. Tr. 28:18-23, 55:6-8, 101:9-18, 102:1-4.

Given these admissions, Ms. Flynn is left to rely only on her general "media industry" experience—an incredibly broad and vague catch-all which, by her own description, has centered on the financial performance and valuation of firms in the traditional broadcast television, radio, cable, and media advertising markets, *not* on any specialized expertise regarding the design of streaming products, the differences between interactive and noninteractive product functionality under the governing statute, or even music licensing generally. *See* Flynn Rpt. at 1; Dep. Tr. 53:13-15. Ms. Flynn spent the bulk of her career at Paul Kagan Associates ("Kagan") in various positions including the head of the Media Research Group. *See* Flynn Rpt. at Appendix A. Ms. Flynn describes Kagan as "a leading source of media and telecommunications data and financial analysis" and notes that Kagan's research is "largely dedicated to chronicling the value, trends and economics of the media and communications industries." *Id.* at 1. But none of this experience bears on Ms. Flynn's ability to interpret documents about the design and operation of Pandora's free radio streaming service or comes close to qualifying Ms. Flynn as an expert on the relevant issues in this case under the Rule 702 standard. Ms. Flynn's own admissions and background demonstrate that she is not qualified to opine on how Pandora's free internet radio

6

offering was designed or how it functions today and, as discussed below, her testimony purporting to describe Pandora's motives and intent in doing so is inadmissible.

II.  **The Flynn Report Does Not Address Topics Relevant or Useful to the Trier of Fact in this Case**

In determining whether expert testimony is relevant, the court has a duty to determine whether the proffered expert testimony addresses an issue beyond the common knowledge of the average lay person. *See Daubert*, 509 U.S. at 591; *see also Peoples Gas Co. of Ky. v. Fitzgerald*, 188 F.2d 198, 201 (6th Cir. 1951). Rather, the testimony must be of a "proper subject," which is "one that *assists* the trier of fact." *United States v. Smith*, 736 F.2d 1103, 1105 (6th Cir. 1984) (internal citation omitted). Courts in this Circuit routinely exclude "expert" testimony where a witness simply reads documents or offers lay interpretations that a jury is equally capable of drawing. *See, e.g.*, *United States v. Coffman*, 574 F. App'x 541, 560 (6th Cir. 2014) (excluding expert testimony that merely summarized information without offering any conclusions as to what the information meant); *Univ. of Pittsburgh v. Townsend*, No. 3:04-cv-291, 2007 WL 1002317, at *14–18 (E.D. Tenn. Mar. 30, 2007) (excluding expert testimony that involved document summaries and inferences a layperson could make).

Ms. Flynn's testimony suffers from all the shortcomings highlighted above. It does not assist the trier of fact, but rather usurps the role of the trier of fact. It offers document summaries and inferences unaided by any particularly relevant expertise and lacks any genuine expert opinion. Expert testimony is only relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Daubert*, 509 U.S. at 591 (internal citation omitted). In other words, expert testimony must fit the facts of the case. *See United States v. LeBlanc*, 45 Fed. App'x 393, 400 (6th Cir. 2002). Allowing testimony that is not relevant runs "the risk of the jury affording unwarranted deference" to the expert. *Trentham v. Hidden*

7

*Mountain Resorts, Inc.*, No. 3:08-CV-23, 2010 WL 11519874, at *4 (E.D. Tenn. Jan. 15, 2010) (citation omitted).

This case turns on whether Pandora's free ad-supported internet radio offering is an "interactive" service within the meaning of Sections 114 and 115 of the Copyright Act. The Court, of course, will decide that legal question. Because Ms. Flynn is not qualified to opine on how free Pandora was designed or how it functions, her testimony does nothing to assist this Court's ultimate task of determining whether Pandora's free internet radio offering is interactive under the Copyright Act. Instead, the Flynn Report only confuses this task further by injecting Ms. Flynn's unsubstantiated claim that the free Pandora service is "interactive" based on her personal understanding of what the word "interactive" means in ordinary English and on cherry-picked quotations from Pandora documents that she contends address the issue, all without providing a genuine expert opinion that would assist the factfinder in reaching a determination under the highly specific statutory definition of interactivity that she did not consider. Such testimony clearly does not fit the issues in this case and only risks adding more confusion, rendering it unhelpful and inadmissible under Rules 702(a) and 403.

III.  **The Flynn Report is Methodologically Unreliable and Consists of Impermissible Document Narration**

Were the flaws above not enough, the Flynn Report is inadmissible for yet another reason. Rule 702 requires that an "expert's testimony . . . be the product of reliable principles and methods" that have been reliably applied. *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 975 (M.D. Tenn. 2002), *aff'd*, 89 F. App'x 927 (6th Cir. 2003) (citing Fed. R. Evid. 702). An expert must derive opinions from a discernible, testable methodology, not from "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. "[O]pinion[s] based on . . . unsubstantiated and undocumented information [are] the antithesis of the scientifically reliable

8

expert opinion admissible under *Daubert* and Rule 702." *Cottengim v. Mentor Corp.*, No. 05-161-DLB, 2007 WL 4553995, at *3 (E.D. Ky. Sept. 24, 2007) (quoting *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998)). "The question is whether an expert's methodology can be 'challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1046 (9th Cir. 2014) (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments).

Ms. Flynn's report and testimony should be excluded here because they are not the product of *any* reliable principle or methodology, but are instead merely the product of Ms. Flynn's subjective, ad hoc interpretation and characterization of various Pandora documents and statements from Pandora's employees. Ms. Flynn repeatedly confirmed in her deposition that she applied no specific methodology to analyze these documents and instead was relying only on her general experience with the media industry (insufficient for the reasons noted above) to opine on the meaning of Pandora's documents and statements. *See* Dep. Tr. 67:9-14 ("**A**: I would say this is an opinion as to why Pandora added interactive features. **Q**: And how did you arrive at that opinion? **A**: I arrived at that opinion through my analysis of the materials cited in my report and based on my prior experience as well."); *see also id.* 76:7-9, 97:13-15, 102:23-24, 103:16-19, 110:3-5, 111:1-3, 126:7-11, 126:25–127:1, 130:11-12. She further admitted that she only reviewed the documents mentioned in the report, in addition to one document that was hand-selected by the MLC's counsel. Dep. Tr. 16:5-8, 18:6-13.

The report contains substantive errors that further illustrate the complete unreliability of Ms. Flynn's approach. For example, Ms. Flynn claims that "competitive pressures" pushed Pandora to add "unlimited skips" and replays on its ad-supported service, citing prior testimony

9

of a Pandora executive. Flynn Rpt. at 7–8. But at her deposition, Ms. Flynn admitted the cited testimony does not say that Pandora added unlimited skips and replays, much less that it did so because of "competitive pressures." Dep. Tr. 80:21-24. Nor could Ms. Flynn identify any other document that supported her conjecture. Dep. Tr. 78:20-21, 80:21-24, 82:2-4.

Even more jarring, Ms. Flynn cited Pandora's 2016 Form 10-K as containing the following statement: "if we are not able to maintain these direct licenses, we could lose the right to provide interactive features in our *ad-supported service*." Flynn Rpt. at 10 (emphasis added). In reality, the Form 10-K states that Pandora could "lose the right to provide interactive features in our *current services, or launch an on-demand music service*."[2] Weeks Decl., Ex. C, Form 10-K at 13 (emphasis added). Ms. Flynn conceded that she was "not sure" why the quote in her report did not match Pandora's publicly filed 10-K and speculated that there may have been "some sort of error in citation." Dep. Tr. 84:10-12.

Because Ms. Flynn's testimony is grounded only in selective document excerpts, subjective interpretations, and at times materially inaccurate quotations, it does not satisfy Rule 702's reliability requirement and must be excluded.

## IV. The Flynn Report Contains Inadmissible Opinions on Pandora's Motives, Intent, and State of Mind

Even if Ms. Flynn were qualified (she is not) and her methods were reliable (they are not), her testimony would still be inadmissible because it amounts to nothing more than speculation about Pandora's motives, goals, and state of mind as purportedly revealed in certain documents that the Court and jury can read and interpret for themselves. It is well-settled that an

---

[2] Because Pandora Plus offers limited caching of stations for offline listening—a feature not permitted by the Section 114 license for noninteractive services—Pandora has long secured mechanical licenses for Pandora Plus and has paid royalties to the MLC for that product offering since the MLC's inception.

10

Case 3:24-cv-00168    Document 135    Filed 02/09/26    Page 14 of 19 PageID #: 8528

expert may not opine on "the intent, motives or states of mind of corporations" because such opinions "have no basis in any relevant body of knowledge or expertise." *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 546 F. Supp. 3d 666, 677 (S.D. Ohio 2021) (internal citation omitted). The Sixth Circuit has made clear that "[t]he intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury within the meaning of Federal Rule of Evidence 702." *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996), *abrogated on other grounds by Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 515 (6th Cir. 1998). Put simply, "[a] party's state of mind . . . is not within the knowledge of any expert." *Johnson v. Baker*, 2009 WL 3486000, at *5 (W.D. Ky. Oct. 23, 2009) (citation omitted).

The Flynn Report squarely violates this cardinal principle. In her deposition, she admitted that *each of her first three* stated "conclusions" concerns Pandora's goals, motivations or intent. Specifically, she testified that:

- Her first conclusion assesses Pandora's "goal" to better compete in the marketplace, Dep. Tr. 103:9-19;
- Her second conclusion addresses Pandora's "motivation" in launching on-demand music streaming as a feature of free Pandora, Dep. Tr. 110:17-19; and
- Her third conclusion describes Pandora's "primary goals of the launch of Free Pandora's on-demand features." Dep. Tr. 112:2-4.

Her report is peppered throughout with similar inadmissible statements, including Ms. Flynn's contentions that:

- "By the middle of 2017, Pandora's top leadership realized that a shift in strategy towards free on-demand streaming was needed." Flynn Rpt. at 11.

11

- Pandora's marketing materials were "consistent with the leadership team's strategic plan to focus on ad-supported on-demand streaming." Flynn Rpt. at 20.
- "Pandora's marketing goals were also shown in the frustration of leadership when media failed to credit Pandora Free for all of its on-demand functionality." Flynn Rpt. at 21.

When asked for the basis of these state-of-mind conclusions, Ms. Flynn admitted that she had nothing beyond her own review of documents and her own subjective interpretation of them. Dep. Tr. 96:7-9. That is precisely the kind of *ipse dixit* that Rule 702 and *Daubert* forbid. *See Tamraz*, 620 F.3d at 671 ("The *ipse dixit* of the expert alone is not sufficient to permit the admission of an opinion.") (quotation modified). Ms. Flynn's "opinions" on the motivations and strategy of Pandora employees are additionally inadmissible because they "usurp[] the jury's fact-finding function by allowing an expert to testify as to a party's motives for its actions." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d 698, 719 (S.D. Ohio 2016); *see also Hunt v. Hadden*, 127 F. Supp. 3d 780, 788 (E.D. Mich. 2015), *aff'd*, 665 F. App'x 435 (6th Cir. 2016) ("The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgement for the jury's and would not be helpful to the jury.").

In any event, Ms. Flynn's focus on Pandora's subjective motivations and internal "goals" does not help the Court decide the controlling question in this case: whether Pandora's ad-supported internet radio offering is an interactive service under the Copyright Act or a noninteractive one. That question turns on the objective functionality of the various components of Pandora's service offerings, not on what Pandora executives allegedly hoped to achieve. Statutory interpretation is a question of law for the Court, not something a party can determine or

12

concede through its own statements or characterizations. *See United States v. Dedman*, 527 F.3d 577, 584 (6th Cir. 2008) ("A matter requiring statutory interpretation is a question of law.") (citation omitted); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) ("When the meaning of a statute [i]s at issue, the judicial role [i]s to interpret the act of Congress, in order to ascertain the rights of the parties.") (quotation modified).

Because Ms. Flynn's opinions are aimed at Pandora's supposed motives and state of mind, rather than objective facts that would assist the Court, her testimony is improper, irrelevant, and should be excluded in full.

## CONCLUSION

For the foregoing reasons, Pandora respectfully requests that this Court exclude the expert report of Robin Flynn and preclude Ms. Flynn from offering any expert testimony in this case.

Dated: February 9, 2026

Respectfully Submitted,

*/s/ Benjamin E. Marks*

**WEIL, GOTSHAL & MANGES LLP**

Benjamin E. Marks (admitted *pro hac vice*)
Todd Larson (admitted *pro hac vice*)
767 Fifth Avenue, 32nd Fl.
New York, NY 10153
Benjamin.Marks@weil.com
Todd.Larson@weil.com

Crystal L. Weeks (admitted *pro hac vice*)
Sebastian Laguna (*pro hac vice* pending)
2001 M Street NW, Suite 600
Washington, DC 20036
Crystal.Weeks@weil.com
Sebastian.Laguna@weil.com

**SHERRARD ROE VOIGT & HARBISON**

Michael G. Abelow (No. 026710)
Micah N. Bradley (No. 38402)
1600 West End Ave., Suite 1750
Nashville, TN 37203
mabelow@srvhlaw.com
mbradley@srvhlaw.com

*Counsel for Defendant Pandora Media, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, the foregoing *Memorandum of Law in Support of Pandora Media LLC's Daubert Motion to Exclude Testimony of Robin Flynn* was filed with the Court's electronic filing system, which will serve a copy on all counsel of record.

*/s/ Benjamin E. Marks*