# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| MECHANICAL LICENSING COLLECTIVE,<br><br>     Plaintiff,<br><br>v.<br><br>PANDORA MEDIA, LLC,<br><br>     Defendant. | Civil Action No. 3:24-cv-00168<br><br>District Judge Eli J. Richardson<br><br>Magistrate Judge Jeffrey S. Frensley<br><br>JURY DEMAND |

## MECHANICAL LICENSING COLLECTIVE'S MEMORANDUM OF LAW IN OPPOSITION TO PANDORA MEDIA, LLC'S *DAUBERT* MOTION <u>TO EXCLUDE TESTIMONY OF ROBIN FLYNN</u>

PRYOR CASHMAN LLP
Benjamin K. Semel (admitted *pro hac vice*)
M. Mona Simonian (admitted *pro hac vice*)
Joshua Weigensberg (N.Y. Bar No. 4894929)
Jason E. Sloan (*pro hac vice* application pending)
Erik F. Bakke (admitted *pro hac vice*)
7 Times Square
New York, New York 10036
Phone: (212) 326-0181
Fax: (212) 798-6326
bsemel@pryorcashman.com
msimonian@pryorcashman.com
jweigensberg@pryorcashman.com
jsloan@pryorcashman.com
ebakke@pryorcashman.com

RILEY & JACOBSON PLC
Elizabeth O. Gonser (TN Bar No. 026329)
1906 West End Ave.
Nashville, TN 37203
P: (615) 320-3738
egonser@rjfirm.com

*Attorneys for Mechanical Licensing Collective*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND................................................................................................... 2

ARGUMENT............................................................................................................................ 3

    A.      Legal Standard On Motion To Exclude .......................................................3

    B.      The Flynn Report Is Directly Relevant, As Shown By Pandora's Own Arguments.......4

    C.      The Flynn Report Methodology Is Accepted And Reliable..........................................10

    D.      The Flynn Report Is About What Pandora Did, Not What It Thought .........................14

    E.      Flynn Is Qualified To Provide Her Expert Testimony ..................................................16

CONCLUSION........................................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Best v. Lowe's Home Ctrs., Inc.*,
   563 F.3d 171 (6th Cir. 2009) ....................................................................................................3

*Bradley v. Ameristep, Inc.*,
   800 F.3d 205 (6th Cir. 2015) ..................................................................................................16

*Capri Sun GmbH v. Am. Beverage Corp.*,
   595 F. Supp. 3d 83 (S.D.N.Y. 2022).......................................................................................12

*In re Com. Money Ctr., Inc.*,
   737 F. Supp. 2d 815 (N.D. Ohio 2010).....................................................................................13

*Counts v. Gen. Motors, LLC*,
   606 F. Supp. 3d 547 (E.D. Mich. 2022).........................................................................3, 12, 17

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993).................................................................................................................4

*Deal v. Hamilton Cnty. Bd. of Educ.*,
   392 F.3d 840 (6th Cir. 2004) ..................................................................................................17

*Deere & Co. v. FIMCO Inc.*,
   239 F. Supp. 3d 964 (W.D. Ky. 2017)......................................................................................5

*Dial Corp. v. News Corp.*,
   165 F. Supp. 3d 25 (S.D.N.Y. 2016).......................................................................................16

*Dortch v. Fowler*,
   588 F.3d 396 (6th Cir. 2009) ...................................................................................................4

*In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
   348 F. Supp. 3d 698 (S.D. Ohio 2016) ...................................................................................15

*Eight Mile Style, LLC v. Spotify USA Inc.*,
   No. 3:19-CV-0736, 2024 WL 6969215 (M.D. Tenn. July 8, 2024)........................................4

*First Tennessee Bank Nat. Ass'n v. Barreto*,
   268 F.3d 319 (6th Cir. 2001) ..................................................................................................12

*Hagerman v. Yukon Energy Corp.*,
   839 F.2d 407 (8th Cir. 1988) ...................................................................................................5

*Johns Hopkins Univ. v. Alcon Laboratories Inc.*,
   No. CV 15-525, 2018 WL 4178159 (D. Del. Aug. 30, 2018) ................................................16

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ................................................................11, 16

*Krauth v. Exec. Telecard, Ltd.*,
890 F. Supp. 269 (S.D.N.Y. 1995) ..........................................................................5

*Medidata Sols., Inc. v. Veeva Sys., Inc.*,
No. 17 CIV. 589 (LGS), 2022 WL 585715 (S.D.N.Y. Feb. 24, 2022)....................11

*In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*,
No. 2:03-MD-1565, 2009 WL 2145796 (S.D. Ohio July 14, 2009)........................4

*New York City Transit Auth. v. Express Scripts, Inc.*,
588 F. Supp. 3d 424 (S.D.N.Y. 2022).....................................................................4

*Owner-Operator Indep. Drivers Ass'n v. Comerica Bank*,
No. 05-CV-0056, 2011 WL 4625359 (S.D. Ohio Oct. 3, 2011)...............................13

*Ross v. Am. Red Cross,*
No. 2:09-CV-905, 2012 WL 1656995 (S.D. Ohio May 10, 2012).........................16

*S.E.C. v. Roszak*,
495 F. Supp. 2d 875 (N.D. Ill. 2007) .....................................................................13

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ..............................................................................3, 12

*Shupe v. Rocket Cos.*,
752 F. Supp. 3d 689 (E.D. Mich. 2024)..................................................................13

*Smith v. Pfizer Inc.*,
714 F. Supp. 2d 845 (M.D. Tenn. 2010)..................................................................12

*Solid 21, Inc. v. Richemont N. Am., Inc.*,
No. 19-CV-1262 (AS), 2023 WL 6058614 (S.D.N.Y. Sep. 18, 2023)....................11

*Thomas v. Lambert*,
606 F. Supp. 3d 592 (E.D. Mich. 2022)...................................................................17

*Thompson, I.G., LLC v. Edgetech I.G., Inc.*,
No. 11-cv-12839, 2012 WL 3870563 (W.D. Mich. Sep. 6, 2015) ...........................4

*United States v. Lawson*, No. CRIM.A. 3:08-21-DCR,
2009 WL 1208014 (E.D. Ky. May 1, 2009) .....................................................13, 17

*United States v. L.E. Cooke Co.*,
991 F.2d 336 (6th Cir. 1993) ...................................................................................3

iii

*United States v. Ramer*,
883 F.3d 659 (6th Cir. 2018) ...................................................................................3

*Walter v. Auto-Owners Mut. Ins. Co.*,
No. 3:15-CV-535-TAV-DCP, 2018 WL 3650284 (E.D. Tenn. Aug. 1, 2018) .........................4

**Other Authorities**

Fed. R. Evid. 702 ....................................................................................................3, 17

Fed. R. Evid. 703 ....................................................................................................12

Case 3:24-cv-00168     Document 161     Filed 03/13/26     Page 5 of 25 PageID #: 9398

Plaintiff Mechanical Licensing Collective ("The MLC") respectfully submits this memorandum of law in opposition to Defendant Pandora Media, LLC's ("Pandora"; together with The MLC, the "Parties") *Daubert* motion to exclude the testimony of Robin Flynn.

## PRELIMINARY STATEMENT

Pandora admits that the core issue in this action is the features that are available to Pandora Free users.[1] Pandora's argument on this motion is that its own corporate documentation of these features is somehow not relevant to the action. Pandora's position is tantamount to arguing: "The question is whether I did it. The evidence of my detailed strategy to do it, the status reports on me doing it, my advertising of having done it, and my admissions that I did it are not relevant to that inquiry." This position bears no resemblance to the standards for evidence.

Pandora made the telling choice to offer no rebuttal at all to the Flynn Report.[2] It could have offered a competing analysis of its corporate record and product development. It could have submitted a rebuttal expert. It could have presented its own corporate witnesses to argue that Flynn misread the strategic documents or misunderstood the record. Pandora had the tools to contest on weight, if there was something to contest. Pandora did none of these things, and has not substantively disputed that the Flynn Report is accurate. Pandora points to nothing in the Flynn Report that would mislead the Court. Pandora does not challenge the reasonableness of the factual basis underlying the Flynn Report, which involves thousands of pages of Pandora's own documentation, investor materials, and executive statements.

Pandora's choices were not an accident. Pandora was caught in a bind, where the alternative to accepting the record laid out in the Flynn Report was to challenge that record, which includes numerous representations that Pandora's leadership made to investors and under penalty

---

[1] The MLC's cause of action also relates to underpayment of royalties in connection with the Pandora Plus service. Pandora does not discuss its Pandora Plus liability in its *Daubert* motion, and so this opposition focuses only on its Pandora Free liability for convenience. Pandora's liability in connection with Plus is addressed in The MLC's Motion for Summary Judgment at 26-29.

[2] As used herein, the "Flynn Report" refers to the Expert Report of Robin Flynn dated October 24, 2025, submitted with Pandora's moving papers at ECF No. 135-2.

of law. This motion is Pandora's attempt to have its cake and eat it too – to neither challenge the admissions in the Flynn Report nor face the consequences of failing to do so. Pandora's request on this motion is to exclude an expert report that is reliable, accurate, unchallenged, and has an unimpeachable factual basis. What Pandora thus seeks from the Court is audacious: relief from evidence so incriminating that it cannot produce a witness to challenge it.

As set forth below, Pandora's motion fails on every prong of the analysis. Flynn is eminently qualified. Her methodology is accepted and reliable. Her opinions are relevant to the claims, and much of her report directly addresses Pandora's own arguments. There is simply no basis in the law to exclude any part of the Flynn Report.

## **FACTUAL BACKGROUND**

The MLC served the Flynn Report on October 24, 2025, the deadline for affirmative expert reports. Pandora did not serve any affirmative expert report.

On the deadline for rebuttal reports, Pandora submitted two reports in rebuttal to The MLC's other expert, Juan Serruya. Pandora did not submit any rebuttal to the Flynn Report. Pandora has not offered as a fact witness in this proceeding any of the executives whose statements are addressed in the Flynn Report, including Jennifer Witz, the current CEO of Pandora's parent company SiriusXM and signatory to its Forms 10-K that are discussed in the Flynn Report. Pandora also did not submit testimony from any such executive in response to The MLC's Motion for Summary Judgment (ECF No. 115 *et seq.*), which included the Flynn Report and its exhibits as evidence (ECF No. 114). Pandora's opposition to The MLC's Motion for Summary Judgment also does not contain any evidence or argument disputing the veracity of any of the information on which the Flynn Report relied, or the conclusions reached in the Flynn Report (*see* ECF Nos. 147-152).

The contents of the Flynn Report itself are addressed in the Argument sections below.

2

**ARGUMENT**

**A.     Legal Standard On Motion To Exclude**

Expert testimony is admissible if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702.

Where "an expert's testimony amounts to mere guess or speculation, the court should exclude [it], but where the opinion has a reasonable factual basis, it should not be excluded.  Rather, it is up to opposing counsel to inquire into the expert's factual basis."  *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) (internal quotation omitted); *see also United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018) (holding that where opinion has a reasonable factual basis, "any remaining challenges merely go to the weight, as opposed to the admissibility, of the expert testimony").  In reversing a district court decision excluding proposed expert testimony, the Sixth Circuit explained that "because the opinions were based upon facts in the record, and were not 'assumptions' or 'guesses,' challenges merely went to the accuracy of the conclusions, not to the reliability of the testimony."  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (*quoting Jahn v. Equine Servs.*, 233 F.3d 382 (6th Cir. 2000)).

The *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other."  *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009); *see also Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547, 584 (E.D. Mich. 2022) (holding that "[t]he crux of the opinion-witness analysis is 'whether a putative expert's testimony would be inadmissible junk science or instead would be testimony falling within the range where experts might reasonably differ'") (*quoting Thomas v. Novartis Pharms. Corp.*, 443 F. App'x 58, 60 (6th Cir. 2011) (internal quotation omitted)).

3

"The Sixth Circuit has repeatedly recognized that rejection of expert testimony is the exception, rather than the rule." *Eight Mile Style, LLC v. Spotify USA Inc.*, No. 3:19-CV-0736, 2024 WL 6969215, at *3 (M.D. Tenn. July 8, 2024) (*citing U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 749 (6th Cir. 2016)) (internal quotation omitted); *see also Thompson, I.G., LLC v. Edgetech I.G., Inc.*, No. 11-cv-12839, 2012 WL 3870563, at *2 (W.D. Mich. Sep. 6, 2015) ("Disqualification is a drastic measure that should be used sparingly."). The gatekeeping function established by *Daubert* was "never intended to serve as a replacement for the adversary system." *Walter v. Auto-Owners Mut. Ins. Co*., No. 3:15-CV-535-TAV-DCP, 2018 WL 3650284, at *11 (E.D. Tenn. Aug. 1, 2018). Rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993); *see also New York City Transit Auth. v. Express Scripts, Inc*., 588 F. Supp. 3d 424, 445 (S.D.N.Y. 2022) (holding alleged weaknesses industry expert's characterizations of facts "are fair ground for cross-examination, but they are not a basis for preclusion").

**B.**     **The Flynn Report Is Directly Relevant, As Shown By Pandora's Own Arguments**

       1.     The Flynn Report Relates To The MLC's Claim In This Action

In this litigation concerning the interactive features available to Pandora Free users, Pandora offers conclusory claims that its own corporate record on these features is somehow not "relevant or useful." (Memorandum of Law in Support of Pandora Media, LLC's *Daubert* Motion, ECF No. 135 ("Moving Br.") at 7-8.) This position has no support in the law. Pandora's documentation and disclosures about what Pandora Free was designed to do—and what Pandora Free users are able to do—are plainly "relevant and useful" to a case that turns on what Pandora Free users are "enable[d]" to do. *See e.g.*, *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) ("The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence[.]"); *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.,* No. 2:03-MD-1565, 2009 WL 2145796, at *10

4

(S.D. Ohio July 14, 2009) (emphasizing heightened probative value of "admissions by party opponents" given party witnesses' inherent incentive to "slant their testimony to obtain the most favorable outcome"); *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 984 (W.D. Ky. 2017) (agreeing that "[i]t is entirely proper and relevant for a qualified expert witness to opine as to ... factual questions, such as the ways in which the goods or services are sold and advertised…"). Courts have even noted that investor materials of the kind incorporated in the Flynn Report can be highly probative of the issues they discuss. *See Krauth v. Exec. Telecard, Ltd.*, 890 F. Supp. 269, 294 & n.5 (S.D.N.Y. 1995) (holding disclosures in SEC Form 10-Q constitute "strong evidence"); *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 411-12 (8th Cir. 1988) (treating SEC filings as evidentiary admissions where factual statements therein were not rebutted by any reliable contrary evidence).

The discussion below addresses the affirmative relevance of the Flynn Report, although it is unclear what Pandora's specific objection is as to relevance. Pandora concedes that "how [Pandora Free] was designed or how it functions" are relevant topics. (Moving Br. at 8.) The Flynn Report speaks to those topics.

The Flynn Report provides a rigorous examination of Pandora's product development, sifting through thousands of pages of corporate disclosures regarding how Pandora Free was designed and how it functions. The report charts the commercial development of Pandora Free: what the service is, where it came from, and how it has evolved over time, just as Pandora purported to do in its Answer. (*See* ECF No. 28 (the "Answer") at 2.) However, the Flynn Report reveals that the story that Pandora has floated in this litigation bears little resemblance to the actual history revealed across years of its corporate record.

For example, while Pandora alleged that, since its inception in 2005, Pandora Free "has offered noninteractive personalized radio stations that provide a … radio-style listening experience" (*see id.*), the Flynn Report identifies investor communications from 2017 through 2022 that make clear that Pandora's "stations," in its CFO's words, are "incredibly personalized and tailored" to

5

each user – that is, in actuality, they are *unlike* a traditional "radio-style listening experience." (Flynn Report ¶¶ 70-79; *see also id*. ¶ 13.)

The Flynn Report also traces the history of Pandora's addition of on-demand functionality to Pandora Free, another topic from Pandora's Answer. (Answer at pp. 3-4 (describing Pandora's decision to add on-demand functionality to its services).) Among many details, Flynn explains the documentation showing how interactive functionality was phased into Pandora Free in two waves coming after Spotify's growing free on-demand service put competitive pressure on Pandora. Flynn compiles the factual record supporting these conclusions, including Pandora executive statements that growing user loss resulted from Pandora not having "functionality beyond what a statutory webcasting service is allowed to provide" such as "the ability to replay tracks" and "the ability to hear a specific track on-demand." (*Id*. ¶¶ 15-18.)

The Flynn Report then compiles corporate strategy documents and investor materials showing how, in response to this competitive pressure, Pandora added its first wave of interactive features, unlimited skips and replays, to Pandora Free in September 2016. (Flynn Report ¶¶ 22-23; *see also* Flynn Exh. 10 (ECF No. 108-9) at 13.)

The Flynn Report similarly synthesizes the steps and timeline towards Pandora's roll-out of the second wave of interactive features to Pandora Free, namely, search-and-play on-demand listening (referred internally and with investors as the "Premium Access" feature). She explains the reported data showing Pandora's continued user base decline, traces how strategic planning led to investor statements by Pandora executives attributing the decline to users being unable to "hear the song they want on-demand" and to pressures from "the emergence and growth" of competitors offering "free on-demand" services, and identifies the executives' resulting communications conveying that "bringing [interactive features] into our ad-supported product [is] a key priority for us." (Flynn Report ¶¶ 26, 28, 35; *see also id*. ¶ 36 ("When you look at reasons why people leave Pandora, when the company surveys them, the top reasons all have to do with

6

the inability to play a specific song.  It's the lack of interactivity features in the ad supported product.  And that's something that we're working on addressing.").)

The Flynn Report then lays out corporate and industry documentation reflecting on the actual implementation of the full on-demand functionality within Pandora Free, in accordance with the strategic plans.  The factual record that Flynn compiles is clear and unequivocal.  This includes identifying statements in investor materials in which Pandora leadership told investors that it had accomplished its goal of adding on-demand functionality to Pandora Free in order to remain competitive.  (*See id.* ¶¶ 37, 38 (confirming launch of "more interactivity into our ad-supported service so that it can be a full alternative to things like YouTube or Spotify's free services."); *id.* ¶ 49 (discussing "unprecedented functionality" on Pandora Free and "a new feature that allows our ad-supported and Plus listeners to access our complete on-demand catalog in exchange for viewing a high-value video ad.  It is the richest ad-supported on-demand mobile music experience on the market."); *id.* ¶ 30 ("[W]e now have more compelling and complete functionality in our mobile ad-supported service than any other competitor.").)  Moreover, while Pandora's investor statements are particularly compelling due to their context, the Flynn Report synthesizes a far broader array of documentation, including many internal strategic and planning documents, marketing content, industry commentary, and other materials from the same periods, demonstrating that the materials are consistent with each other and the Flynn Report conclusions. (*See e.g., id.* ¶¶ 26-27, 33, 39-44, 46.)

Pandora did not offer any evidence to dispute the veracity of any of its statements or any of the Flynn Report conclusions concerning Pandora's strategy, product development, or product functionality.  Pandora also did not allege that Flynn failed to consider any relevant materials.

2.       Pandora's Own Arguments Establish The Relevance of The Flynn Report

The Flynn Report directly debunks defensive arguments that Pandora has floated in this action, another reason why it is relevant to the action and helpful to the Court.  Although the subject matter of these topics is not always related to the statutory test, that stems from the fact that

7

Pandora's filings throughout this action have been replete with arguments unrelated to the statutory test. These distracting arguments are dismantled by the Flynn Report's analysis, which synthesizes irrefutable corporate documentation to show that the facts (which include Pandora's own admissions) are the virtual opposite of what Pandora argues in this action. It is bold but untenable for Pandora to argue that it should be permitted to contrive irrelevant defensive arguments, but The MLC's experts should not be permitted to disprove those arguments because of their irrelevance to the statutory test.

(a) Pandora's "Conversion" Arguments

The first such argument is Pandora's attempt to explain away the "premium access" on-demand feature on Pandora Free by saying it is aimed at converting users into Pandora Premium subscribers.[3] Pandora's summary judgment brief suggests that the feature was created "[i]n order to expose free Pandora users and Pandora Plus subscribers to the benefits of a subscription to Pandora Premium." (ECF No. 127 at 12.) This "conversion" theory is also what props up Pandora's characterizations of the feature as a "trial" or "sample" of Pandora Premium. (Answer at 2, 4, 8, 12-13; ECF No. 147 at 3, 6, 12.) None of these arguments for *why* Pandora Free users are able to play music on demand changes the fact that Pandora Free is an interactive service under the statutory test—but it is evident that Pandora consider them important arguments and features them throughout its papers.

The Flynn Report shows the conversion arguments to be meritless. As noted above, in tracing the development and rollout of on-demand features on Pandora Free, the Flynn Report shows that Pandora communicated to investors and consumers that on-demand listening served as a core part of Pandora Free that made it an attractive alternative to the ad-supported, on-demand services of its competitors such as YouTube and Spotify. The Flynn Report also explains the evidence that on-demand features are a core part of Pandora Free because they serve to grow Free

---

[3] In addition to being unrelated to an actual defense under the statutory test, Pandora's argument here ignores the separate unlimited skip/replay functionality on Pandora Free, which has no connection to any "conversion" rationale.

users and increase Free revenues. Beginning when on-demand features were introduced to Pandora Free, Pandora executives dismissed the idea that the goal was to convert Free users to Pandora Premium.[4] In 2024, the CEO of Pandora's parent SiriusXM testified in another proceeding that it "seems quite clear" that Pandora Free users are "not potential new on-demand subscribers in hiding."[5]

These unequivocal statements are just part of the corporate record that the Flynn Report compiles to debunk Pandora's argument—as irrelevant as that argument is to the statutory test— that on-demand functionality available to Pandora Free users is aimed at subscription conversion purposes. And Pandora offers no witness or evidence to contest the accuracy and reliability of this analysis, or the reasonableness of its factual basis.[6]

(b)    <u>Pandora's "Importance" Arguments</u>

Another argument Pandora offers, which is also unrelated to the statutory test, is that usage of the on-demand features available on Pandora Free is "minimal."[7] Pandora's Answer claims that "[l]ess than one in twenty visits to Pandora's free tier involves" the use of that feature. (Answer at p. 4.) The statutory test concerns what is *enabled*, not what is used, and so the only relevance of statistics for on-demand feature usage is that they prove that the feature is *enabled*, which means that the statutory test is satisfied.[8] Nonetheless, Pandora has made defensive arguments around

---

[4] *See* Flynn Report ¶ 60 (quoting Pandora's CFO in 2018 that, "we have an advertising business that can be profitable . . . so we are not trying to move people out of our advertising tier and proactively put them in a subscription tier.").

[5] *Id.* ¶ 68.

[6] Far from challenging the factual basis for Flynn's opinions, Pandora's position is that her report is *too* factual. Pandora argues that the Flynn Report "describe[s] what the documents say," "string[s] together quotations" from Pandora documents, and is "mere recitation" and "just a book report." (Moving Br. at 1-3.) There is thus no dispute that the report has a reasonable factual basis. The MLC explains below how the Flynn Report is also the product of substantial expert analysis that a layperson could not do.

[7] Pandora's Memorandum of Law in Support of Its Motion for Summary Judgment, ECF No. 127 at 15-16.

[8] The MLC's Memorandum of Law in Support of Motion for Summary Judgment on Liability, ECF No. 110 at 23-24; The MLC's Memorandum of Law in Opposition Pandora's Motion for Summary Judgment, ECF No. 157 at 12-13.

9

feature usage a cornerstone of its summary judgment briefing, and evidence debunking those arguments is directly relevant to the action.

The Flynn Report demonstrates how profoundly misleading Pandora's claims are about "minimal" interactive feature usage on Pandora Free, by providing the strategic context from Pandora's own documentation. The Flynn Report outlines the tremendous value that Pandora itself places on Pandora Free interactive features, which is consistent with the emphasis that its leadership placed on the initiative to launch such features, and is further reinforced by years of tracking and product feature analysis. (Flynn Report ¶¶ 16-17, 20, 28, 35-36.) The section of the Flynn Report supporting her conclusion that "*On-Demand Functionality Is A Key Driver Of User Engagement And Ad Revenue Across Pandora Free*" shows the clear and indisputable record of the critical role that these features play in driving Pandora's business, thoroughly rebutting the insinuations by Pandora that these features are minimal or unimportant. (*Id*. at ¶¶ 52-69.)

And again, Pandora offers no witness to challenge Flynn's evidence and conclusions on this topic and submits no evidence controverting the accuracy and reliability of the analysis, whether as to the source documents themselves (which are independently in the record on summary judgment as exhibits to the Semel Declaration), or as to Flynn's conclusions based upon that factual record. Pandora cannot float defensive arguments and evade the conclusive evidence disassembling those arguments.

C.      **The Flynn Report Methodology Is Accepted And Reliable**

Pandora argues that the Flynn Report's analysis of Pandora documents does not show an "interpretive expertise" that "a lay person does not possess and could not apply by reading the documents on their own." (Moving Br. at 1.) In essence, Pandora argues that the analysis is so obvious that it does not take an expert to present it. This argument fails as to the standard for expert testimony while also conceding the compelling result of Flynn's analysis.

As to methodology: Flynn's conclusions may be clear as assembled, but they were not assembled by a layperson, and the clarity of her report is precisely a testament to her expertise in distilling voluminous corporate materials to their relevant parts. Flynn reviewed thousands of

10

pages of SEC filings, earnings call transcripts, internal strategy presentations, board materials, product documentation, and corporate communications.[9] These corporate materials require significant industry expertise to navigate, to identify what is significant, and to place in the context of business models and competitive market dynamics—they are "not the type of self-explanatory documents that jurors can comprehend based on common knowledge." *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 1006 (N.D. Cal. 2022) (hereafter, "*In re JUUL Labs*"). A layperson presented with a lengthy Form 10-K would not know where on the spectrum of reliable corporate documentation that document sits, let alone which risk-factor disclosures bear on Pandora's interactive functionality.[10] A layperson listening to an earnings call would not recognize the competitive significance of the CEO's description of Pandora Free on-demand feature use in the context of Pandora's declining user base.[11] A layperson reading internal corporate decks on product strategy or transcripts of investor presentations would not readily identify the portions reflecting the strategic integration of on-demand features into Pandora Free.[12]

This type of expertise has been repeatedly recognized by the courts. *See Solid 21, Inc. v. Richemont N. Am., Inc.*, No. 19-CV-1262 (AS), 2023 WL 6058614, at *6 (S.D.N.Y. Sep. 18, 2023) (expert allowed to "synthesize otherwise voluminous material" where "[s]treamlining the evidence falls well within the permissible scope of an expert"); *Medidata Sols., Inc. v. Veeva Sys., Inc.,* No.

---

[9] *See generally* Flynn Report App'x C. Flynn's 55 exhibits distill more than 2,000 pages of documentation, which was in turn synthesized from over 4,500 pages of materials considered. Moreover, Pandora failed to identify any relevant documentation that Flynn did not consider, just as it failed to identify any inaccuracies in her analysis. In desperation, Pandora offers the false and misleading contention that Flynn only reviewed "documents mentioned in the report" and one document selected by counsel. (*See* Moving Br. at 9.) A review of the transcript shows that the cited testimony was about what Flynn reviewed *in preparation for her deposition*, not as part of her analysis. (*See* ECF No. 135-3 at 15:16-18:13.) This is just one example of Pandora's unfortunate pattern of deeply misleading characterizations of Flynn's deposition testimony. (*See also infra* at 16, n.17.) Another example is the false and outrageous accusation that Flynn "materially altered key documents" (Moving Br. at 2), which is casually thrown into Pandora's Introduction with no detail or citation, and then never explained or supported.

[10] Flynn Report ¶¶ 13, 22, 23, 29, 32.

[11] *Id.* ¶¶ 28, 30, 37, 48, 59, 75.

[12] *Id.* ¶¶ 26, 37, 38, 54, 55.

11

17 CIV. 589 (LGS), 2022 WL 585715 (S.D.N.Y. Feb. 24, 2022) (denying motion to exclude testimony from expert who "[p]ull[ed] together information from a broad array of sources and synthesiz[ed] it into a qualitative analysis" that "describes [the parties'] software" and "explains the dynamics of markets for such software"); *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 132-34 (S.D.N.Y. 2022) (holding marketing professor's "largely expository approach" did not "render his report inadmissible" where "it is well-established that expert testimony is admissible where it synthesizes or summarizes data in a manner that streamlines the presentation of that data to the jury, saving the jury time and avoiding unnecessary confusion") (cleaned up). Notably, Pandora offers no testimony or evidence that the facts relied upon in the Flynn Report are not of a type reasonably relied on by industry analysts in evaluating product development and strategy. Fed. R. Evid. 703.

Moreover, Pandora's insinuation that the only methodologies allowed under the Federal Rules of Evidence are those from "scientific[]" fields is patently wrong. (*See* ECF No. 135 at 8-9 (citing to cases involving the testing of medical devices, automotive parts, and chemical compounds).) Non-scientific fields are permissible expert subject matter, and the test for assessing the reliability of an expert's methodology is both "flexible" and "tailored to the facts of a particular case" and expert's subject matter. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)); *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334-35 (6th Cir. 2001) ("[T]he four specific factors utilized in *Daubert* may be of limited utility in the context of non-scientific expert testimony."); *Smith v. Pfizer Inc.*, 714 F. Supp. 2d 845, 856 (M.D. Tenn. 2010) ("[W]hen deciding whether to admit expert testimony that relates to a social science, the factors suggested in *Daubert* are not to be applied mechanically; rather, district courts are accorded wide latitude in determining the reliability of expert testimony.") (citation and quotation omitted). When "evaluating the reliability of qualitative analyses and methods," courts often look to "the reliability of the expert's personal knowledge or experience." *See Counts*, 606 F. Supp. at 571.

As explained below, Flynn has over three decades of relevant experience in financial and business analysis that she applied to her assignment in this proceeding.  (*See infra* at 17.)  Courts regularly admit opinions involving the very kind of expert financial and business analysis that Flynn provides.  *Barreto*, 268 F.3d at 335 (allowing expert testimony regarding bank procedures whose methodology involved application of "practical experiences throughout forty years in the banking industry"); *United States v. Lawson*, No. CRIM.A. 3:08-21-DCR, 2009 WL 1208014, at *5-7 (E.D. Ky. May 1, 2009) (allowing expert testimony that "distills the relevant portions of [] business financial and legal documents" where the expert had "ten years of experience auditing financial documents," and observing "[i]t is an auditor's job to analyze the implications of corporate and financial documents"); *In re Com. Money Ctr., Inc.*, 737 F. Supp. 2d 815, 835 (N.D. Ohio 2010) (allowing expert testimony from accountant where expert report "presents a logical and technical analysis of [] financial statements" relevant to the litigation); *Owner-Operator Indep. Drivers Ass'n v. Comerica Bank*, No. 05-CV-0056, 2011 WL 4625359 (S.D. Ohio Oct. 3, 2011) (allowing financial accounting expert to testify regarding industry-standard filing practices for UCC Financing Statements); *S.E.C. v. Roszak*, 495 F. Supp. 2d 875, 883 (N.D. Ill. 2007) (allowing testimony from financial expert that gave "much-needed context to Defendant's [] explanations for his stock purchases, which presume a technical understanding of the stock market and trading strategies").[13]

The lack of substance to Pandora's motion is reflected in its sole claim of "substantive errors" within the Flynn Report.  What Pandora characterizes as Flynn's "substantive errors" are (1) a typographic error (citing the 2016 10-K instead of the 2017 10-K for a quote, something

---

[13] As these cases and others also show, Pandora's contention that it is somehow a mark against an expert to offer "summaries" or "interpretation" of documents forming the basis of the experts' opinion is a misstatement of the law.  (*See* Moving Br. at 7, 9.)  *See also Shupe v. Rocket Cos.*, 752 F. Supp. 3d 689, 728-29 (E.D. Mich. 2024) ("Plaintiffs first argue that Dr. Starks's opinion is 'based exclusively on her subjective analysis of analyst reports' rather than any 'scientific principles.'  But Dr. Starks employed qualitative content analysis when she synthesized all relevant Rocket analyst reports, and drew conclusions from these reports based on her education and experience in financial economics and investor influence.").

13

Pandora hyperbolically describes as "jarring") which had already been corrected before this motion was filed; [14] and (2) a hollow attempt to imply a problem with the Flynn Report's conclusion that Pandora Free launched "unlimited skips" as a feature. This insinuation is based solely on a transcript of Pandora's own counsel fixating in deposition on the fact that Pandora's Chief Product Officer did not use the actual word "unlimited" when he described unlimited skips in prior testimony. (Moving Br. at 9-10.) Pandora fails to mention that the Flynn Report also includes Pandora's home page, which lists "unlimited skips" as a feature of Pandora Free. [15] Pandora thus could not credibly argue that the Flynn Report conclusion is inaccurate, and indeed did not submit evidence contesting that conclusion.

Pandora's empty complaints about methodology, and identification of only two inconsequential "errors," underscores how it offers nothing to challenge the actual substance of the Flynn Report. Pandora offered no rebuttal expert witnesses and no opposition fact witnesses to contest the evidence or conclusions in the Flynn Report, despite the fact that, as discussed above, this evidence largely renders Pandora's arguments on summary judgment indefensible.

**D.      The Flynn Report Is About What Pandora Did, Not What It Thought**

Pandora's argument concerning the admissibility of expert opinion concerning "state of mind" is an answer to a question nobody asked. (Moving Br. at 11.) The MLC does not need to prove – and is not trying to prove – that Pandora's executives had a particular mental state about the interactive features available on its services. As discussed below, the handful of statements in the Flynn Report that Pandora contests are plainly not inferences of state of mind, but rather identify Pandora's corporate plans *as stated by Pandora*.

There is a further fundamental problem with Pandora's argument on this topic: Pandora does not dispute the accuracy of any statement (or "state of mind" as Pandora calls its own statements) that the Flynn Report identifies. Nowhere in its motion (or summary judgment briefing) does Pandora identify a single description of its strategy, business decisions or actions as laid out

---

[14]  ECF No. 108 ¶ 5.

[15] Pandora website at <https://www.pandora.com/>; Flynn Report ¶ 42.

14

in the Flynn Report and say: *that is not what we were doing*. Pandora does not submit evidence arguing that it was *not* adding on-demand features to Pandora Free in order to compete with other interactive services like Spotify and YouTube. It does not submit evidence arguing that it did *not* add on-demand features in order to grow Pandora Free, not Premium. The "state of mind" that Pandora seeks to exclude is one that Pandora accepts is accurate. Pandora's objection is thus not that the Flynn Report got something wrong, but rather that it got everything right yet rests on facts that Pandora would prefer not be in the record.

Even setting aside that Pandora has offered no evidence to challenge the accuracy or reliability of the factual record or conclusions in the Flynn Report, the characterization of the Flynn Report as engaging in speculation on subjective motivation is just incorrect. Pandora identifies only a handful of statements in the Flynn Report that it alleges are improper, and each statement is part of a paragraph that *explicitly cites to statements by Pandora* identifying the corporate plan or strategy to which Flynn refers.[16] Pandora's own examples thus just underscore that Flynn conducts a detailed analysis of Pandora's corporate record—including SEC filings, earnings call transcripts, board presentations, internal strategy documents, and product planning materials—and, drawing on her decades of industry expertise, identifies and synthesizes the statements within that record in which Pandora's own leadership described the company's competitive strategy, product development objectives, and business rationale for adding interactive features to Pandora Free.

Flynn's conclusions are thus grounded in what Pandora documented and disclosed about its own strategy. She does not try to divine hidden thoughts, but rather she makes accessible a corporate record that requires significant expertise to navigate and contextualize, but which is ultimately revealed through its own words. Flynn's conclusions are clearly permissible. *See In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d 698 (S.D. Ohio 2016) (cited by Pandora; expert testimony that "[defendant's] internal documents . . . repeatedly reveal that the

---

[16] *Compare* Moving Br. at 11-12 (listing three statements from Flynn Report at pp. 11, 20, 21) *with* Flynn Report at ¶¶ 26, 44, 46 (the paragraphs containing the statements identified by Pandora along with citations for those exact statements from Pandora's own records).

15

financial cost of the C-8 emissions elimination program inhibited [defendant] from realizing the elimination of C-8 in the 1980s" was admissible); *In re JUUL Labs*, 609 F. Supp. 3d at 1007 ("[expert's] opinions about [defendant's] 'intent' to target certain audiences and 'pervasiveness' are not excludable and are, instead, matters that should be tested on cross-examination"); *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 40-41 (S.D.N.Y. 2016) (rejecting argument that expert testimony was "inappropriately based on [defendant's] ''intent'' to harm competitors" and finding "there is nothing inadmissible about [expert's] reliance on evidence of [defendant's] statements regarding its strategies"); *Johns Hopkins Univ. v. Alcon Laboratories Inc.*, No. CV 15-525, 2018 WL 4178159, at *18 (D. Del. Aug. 30, 2018) (allowing expert to testify to the opposing party's "intended purpose" and "objective" where testimony was not an improper opinion on state of mind, but rather a "restatement of [the opposing party's] own materials").

**E.      Flynn Is Qualified To Provide Her Expert Testimony**

Pandora's challenge to Flynn's credentials fails in every way.  (Moving Br. at 5-7.)  Flynn is not "an expert simply because [s]he claims to be."  (*Id*. at 5 (citation omitted).)  Flynn's qualifications demonstrating her specialized knowledge in her field are unimpeachable.  She has been working in the field of financial analysis for over 38 years.  (Flynn Report ¶¶ 1-4.)  She has authored or contributed to hundreds of reports on the media industry, including streaming music and television.  (*Id.* ¶¶ 3-4 & App'x B (listing over 185 publications Flynn authored).)  She served as the Managing Director of Research of S&P Global Market Intelligence where she managed a group of over 135 researchers who published thousands of articles and reports every year.  (*Id.* ¶ 3.)  She has conducted appraisals of media assets totaling more than $100 billion.  (*Id.* ¶ 5 & App'x A.)  Flynn is clearly qualified to serve as an expert to analyze Pandora's business strategy and product development.[17]  *See e.g.*, *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208-09 (6th Cir. 2015) (explaining that courts "take a liberal view of what 'knowledge, skill, experience, training,

---

[17] Moreover, criticisms that a proffered expert lacks particular specialized knowledge within their field go to the weight, not admissibility, of the expert testimony.  *Ross v. Am. Red Cross*, No. 2:09-CV-905, 2012 WL 1656995, at *4 (S.D. Ohio May 10, 2012).

or education' is sufficient" to satisfy Rule 702); *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004) (rejecting challenges to expert's credibility and finding testimony "readily" met admissibility threshold where, *inter alia*, expert "ha[d] published and presented extensively in the field"); *Thomas v. Lambert*, 606 F. Supp. 3d 592, 602 (E.D. Mich. 2022) (finding that expert possessed the requisite knowledge and experience to offer testimony based on expert's decades of on-the-job experience and his supervision of 200 employees); *Lawson*, 2009 WL 1208014, at *5-7 (expert deemed qualified based on ten years of experience as an auditor).[18]

Unable to challenge Flynn's expertise or conclusions, Pandora instead takes on straw men. Pandora strangely lists potential other expert testimony that might be submitted, and complains that Flynn did not submit that testimony.[19] It goes without saying that an expert does not have to be every expert in order to submit expert testimony. As discussed above, the Flynn Report undeniably has a reasonable factual basis, uses an accepted and reliable methodology, and is unchallenged on substance by Pandora. The fact that she does not also submit other evidence does not detract from the powerful evidence that she does submit. Courts have noted that Rule 702 encourages testimony from multiple experts in different disciplines, each applying their unique expertise to diverse probative evidence. *See Counts,* 606 F. Supp. 3d at 569 (collecting cases).

Indeed, the other expert report submitted by The MLC in this matter, by software designer and engineer Juan Manual Serruya, speaks directly to many of the technical matters that Pandora complains were not part of the Flynn Report. The Serruya Report details the interactive

---

[18] Pandora's characterization is simply false that at Flynn's deposition she "could not identify any publications in her background involving empirical research on the economics or technical operation of digital music platforms." (Moving Br. at 6.) As the cited testimony shows, Flynn responded to an unclear question from Pandora's counsel about identifying publications from memory by directing counsel to look not only to Appendix B (listing reports she has authored) but also to the "many, many more" reports Flynn oversaw and edited. (ECF No. 135-3 at Tr. 50:10-51:12.)

[19] Moving Br. at 3 (protesting that Flynn did not do a report on "consumer surveys, focus groups, or experiments"; interviews with "Pandora employees, music industry executives, artists or songwriters"; "raw usage data"; "back-end technical information"; or "source code"); *id.* at 5-7 (protesting that Flynn does not work in "product design or engineering"; "economics"; "technical operation of digital music platforms"; or "consumer-facing interface design").

functionality of Pandora Free and Plus through clear video demonstrations, product design documentation, code and other evidence. The conclusions and supporting evidence in the Serruya Report were also not rebutted by Pandora in a material way. The Flynn Report and Serruya Report together allow the Court "to draw from expertise in both domains and better understand their testimony." *Id*. at 568-69. Pandora's argument that, in essence, the Flynn Report is not also the Serruya Report thus misinterprets the standards for expert testimony, and cannot form a basis to exclude the Flynn Report.

## CONCLUSION

For the foregoing reasons, The MLC respectfully requests that the Court deny Pandora's *Daubert* motion to exclude the testimony of Robin Flynn, and grant all other relief as the Court deems just and proper.

Dated: New York, New York
March 13, 2026

**PRYOR CASHMAN LLP**


*/s/ Benjamin K. Semel*
Benjamin K. Semel (admitted *pro hac vice*)
M. Mona Simonian (admitted *pro hac vice*)
Joshua Weigensberg (N.Y. Bar No. 4894929)
Jason E. Sloan (*pro hac vice* application pending)
Erik F. Bakke (admitted *pro hac vice*)
7 Times Square
New York, New York 10036
Phone: (212) 326-0181
Fax: (212) 798-6326
bsemel@pryorcashman.com
msimonian@pryorcashman.com
jweigensberg@pryorcashman.com
jsloan@pryorcashman.com
ebakke@pryorcashman.com


*/s/ Elizabeth O. Gonser*
Elizabeth O. Gonser (TN Bar No. 026329)
**RILEY & JACOBSON PLC**
1906 West End Ave.

18

Nashville, TN 37203
P: (615) 320-3738
egonser@rjfirm.com

*Attorneys For Plaintiff*
*Mechanical Licensing Collective*

19

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that a true and exact copy of the foregoing document has been filed with the Clerk of Court using the CM/ECF system, which sent notice of such filing to the parties' counsel of record.

This 13th day of March, 2026.

*/s/ Benjamin K. Semel*
Benjamin K. Semel
